**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>ERNEST SMITHER, JR.<br><br>Debtor | Chapter 7<br>Case No. 14-40607-MSH |

**MEMORANDUM OF DECISION ON OBJECTION OF THE CHAPTER 7 TRUSTEE TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION**

John A. Burdick, Jr., the chapter 7 trustee in this case, has objected to the claim of exemption by the debtor, Ernest Smither, Jr., in property located at 13 Presidential Drive, Southborough, Massachusetts. The trustee seeks denial of Mr. Smither's homestead exemption claim in its entirety or, alternatively, a reduction in the value of his homestead claim pursuant to Bankruptcy Code § 522(o). Mr. Smither insists that his homestead exemption be recognized in the full amount he has claimed. For the reasons presented below, Mr. Burdick's objection will be overruled.

**Facts**

The facts relevant to this matter are taken from the parties' joint statement of agreed facts, the undisputed allegations in the pleadings and the court's docket in this case, including an associated adversary proceeding.[1]

---

[1] A court may take judicial notice of its own docket. *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999).

1

On April 26, 1995, Mr. Smither and his wife, Jacqulyn Smither, who is not a debtor in a bankruptcy case, purchased a home at 13 Presidential Drive in Southborough, taking title as tenants by the entirety. The property has remained the Smithers' residence ever since. On March 21, 2014, Mr. and Ms. Smither each recorded a declaration of homestead on the property pursuant to section 2 of the Massachusetts Homestead Act, Mass. Gen. Laws. ch. 188, which permits an elderly or disabled homeowner to exempt up to $500,000 in equity in a principal residence. One week later, on March 28, 2014, Mr. Smither initiated this case by filing a voluntary petition under chapter 7 of the Bankruptcy Code (11 U.S.C. § 101, *et seq*.).

Digital Federal Credit Union ("DCU") holds a first mortgage on the Smithers' home securing their obligations under a promissory note, which as of the date of Mr. Smither's bankruptcy filing, had an outstanding balance of $870,263.12. Sometime prior to 2011, the Smithers entered into a home equity line of credit ("HELOC") arrangement with DCU, granting DCU a second mortgage on their home to secure their obligations under an accompanying note. Under the HELOC's terms, the maximum indebtedness that could be outstanding at any time was $300,000. According to Mr. Smither, he used the HELOC primarily as a line of credit for his business activities, enabling him, depending on the liquidity of his business ventures, periodically to borrow from the HELOC and then repay amounts borrowed. As of the date of his bankruptcy filing, the Smithers owed DCU $150,475.62 on the HELOC note.

According to schedule D (secured claims) of the schedules of assets and liabilities filed by Mr. Smither in support of his bankruptcy petition, Rockland Trust Company holds a judicial lien on Mr. Smither's interest in his home to secure a claim in the amount of $1,939,102.85. According to a proof of claim filed by Rockland, its lien claim was $2,050,667.67 as of the

2

bankruptcy filing date.[2] Mr. Smither sought to avoid Rockland's judicial lien under Bankruptcy Code § 522(f) but I denied his motion as premature in light of the trustee's objection to Mr. Smither's homestead exemption claim. It is a precondition to a debtor's right to avoid a judicial lien that it impairs an exemption to which the debtor would be "entitled." Bankruptcy Code § 522(f)(1).

There is some uncertainty about the value of the Presidential Drive property. At different times during this case Mr. Smither has ascribed to his home a value as low as $865,000 and as high as $1,775,900.[3] Mr. Burdick has not expressed an opinion on the matter but because I will not be applying § 522(o) to reduce the value of Mr. Smither's homestead exemption claim, it is not necessary to establish the value of the Presidential Drive property for purposes of this contested matter.

The amount the Smithers owed to DCU on the HELOC fluctuated dramatically during the period between January 1, 2011 and March 28, 2014, the date Mr. Smither filed his bankruptcy petition. The parties agree that this period, which I will call the "HELOC Payment Period," is the relevant period for purposes of the parties' current dispute. For example, on the HELOC Payment Period start date of January 1, 2011, the amount owed on the HELOC was

---

[2] The lien attached to assets of both Mr. Smither and his son, Ernest Smither, III. Mr. Smither's son filed his own bankruptcy case and in that case avoided Rockland's lien against his residence. *See* Chapter 7 Case No. 12-12575-FJB, docket # 79.

[3] Schedule A (real property) of Mr. Smither's schedule of assets lists the property's value as $865,000. A broker's price opinion attached to Mr. Smither's motion to avoid Rockland's lien valued the property on the bankruptcy filing date as between $1,400,000 and $1,500,000. The Southborough tax assessor, whose statement is also attached to the motion to avoid Rockland's lien, valued the property at $1,775,900.

3

$77,083.90. As of January 31, 2011, the outstanding balance reached its low point of $34,084.30 and then peaked at $298,664.43 on January 31, 2012. At the end of the HELOC Payment Period when Mr. Smither filed his bankruptcy petition, the balance stood at $151,989.43.

On March 31, 2015, Mr. Burdick commenced an adversary proceeding against Mr. Smither's wife, seeking to recover assets Mr. Burdick alleges were fraudulently transferred to her by Mr. Smither. Mr. Smither is not named as a defendant in that proceeding (although Mr. Burdick in his objection to Mr. Smither's exemption says he is). Mr. Burdick has moved to consolidate the adversary proceeding with his objection to Mr. Smither's homestead claim. His motion has not yet been acted upon.

**The Dispute**

Mr. Burdick objects to Mr. Smither's homestead exemption claim on alternate grounds. First, he argues that Mr. Smither may benefit from his Massachusetts homestead only to the extent permitted by state law and that the Massachusetts Homestead Act does not provide homestead protection against claims for fraud. Mr. Burdick predicts that he will obtain a judgment against Ms. Smither in his fraudulent transfer litigation which will necessarily result in a finding the Mr. Smither transferred assets to Ms. Smither with intent to hinder, delay or defraud his creditors. Armed with such a finding, Mr. Burdick argues that Mass. Gen. Laws ch. 188, § 3(b)(6) renders his claims immune from Mr. Smither's homestead rights.

Alternatively, Mr. Burdick asserts that if Mr. Smither is permitted to claim a homestead under Massachusetts law, pursuant to Bankruptcy Code § 522(o) the homestead's value must be reduced by the amount of each HELOC payment made by Mr. Smither with non-exempt assets to the extent such payment was made with intent to hinder, delay or defraud his creditors. Mr.

4

Burdick argues that these payments constituted an impermissible attempt by Mr. Smither to convert non-exempt assets into exempt assets, specifically the exempt equity in Mr. Smither's home which would increase every time a payment was made reducing the secured HELOC loan balance.

According to Mr. Burdick the funds used by Mr. Smither to pay down the HELOC were derived from various non-exempt assets including $440,526.00 in cash consisting of $75,526.00 of insurance proceeds received as a result of fire damage to an apartment building owned by Mr. Smither and his son and approximately $365,000.00 from various deposit accounts held jointly by Mr. Smither and his wife or his mother. Mr. Burdick asserts that the value of Mr. Smither's homestead exemption claim of $500,000 must be reduced by HELOC payments derived from those funds assuming he can prove that those payments were made with intent to hinder, delay or defraud Mr. Smither's creditors. While not requesting a reduction of Mr. Smither's homestead in a specific dollar amount, Mr. Burdick's seems to suggest a reduction by the full $440,526.00.

Mr. Smither disagrees. First, he asserts that the fraud exclusion in the Massachusetts Homestead Act is unenforceable in bankruptcy cases based on the ruling of the United States Court of Appeals for the First Circuit in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999). Next Mr. Smither argues that § 522(o) is inapplicable to his exemption claim. He maintains that § 522(o) does not apply to property owned by a husband and wife as tenants by the entirety. Also, he claims that the facts here do not trigger the operation of § 522(o), first, because he did not make the HELOC payments with the intent to hinder, delay or defraud his creditors and second, because at the end of the day, meaning on the date he filed his bankruptcy petition, the HELOC payments did not result in an increase in his home equity. Mr.

5

Smither points out that the outstanding balance owed on the HELOC was higher on his bankruptcy filing date than it was at the beginning of the HELOC Payment Period and thus the net effect of all his payments and borrowings throughout the Period was to *decrease* his equity in the Presidential Drive property. Finally, Mr. Smither urges that were I were to find § 522(o) applicable in this case, the maximum reduction to his homestead value under that statute could not exceed $148,010.57, the difference between $300,000.00, the maximum loan availability under the HELOC, and $151,989.43, the balance due on the bankruptcy filing date.

In response to Mr. Smither's invocation of the First Circuit's *Weinstein* decision to render inoperative in this bankruptcy case the Massachusetts Homestead Act's exclusion for fraud claims, Mr. Burdick argues that the United States Supreme Court's decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), effectively overruled *Weinstein*.

The parties have requested a ruling on the trustee's objection based on the facts currently before me, without a determination on the intent-to-defraud allegations. To the extent Mr. Smither is correct that Mr. Burdick's objection should be denied for reasons other than Mr. Smither's lack of intention to hinder, delay or defraud creditors, the parties can be spared the time and expense of a trial on that factual issue.

## Discussion

### *The Interplay between Mass. Gen. Laws ch. 188 and Bankruptcy Code § 522*

Massachusetts law permits an elderly or disabled homeowner to exempt from creditor attachment up to $500,000 in equity in a home. Mass. Gen. Laws ch. 188, § 2.[4] Protection is not

---

[4] Mass. Gen. Laws ch. 188, § 2 provides in relevant part:

absolute, however. The exemption does not protect against debts based "upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity." Mass. Gen. Laws ch. 188, § 3(b)(6).[5]

Mr. Burdick takes the position that by virtue of his claims that Mr. Smither transferred assets with intent to hinder, delay or defraud creditors, Mr. Smither's state law homestead exemption is unavailing as to claims by Mr. Burdick. Based upon the language of chapter 188, § 3(b)(6), Mr. Burdick has an obvious problem -- he does not hold an execution based on a fraud judgment against Mr. Smither. The First Circuit has instructed that "it is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." *Pasquina v. Cunningham (In re Cunningham)*, 513 F.3d 318, 324 (1st Cir. 2008). Were Mr. Burdick ever to obtain an execution enforcing a judgment based upon Mr. Smither's fraudulently transferring

---

(a) The estate of homestead of each owner who is an elderly or disabled person, regardless of marital status, shall be protected under this section against attachment, seizure, execution on judgment, levy and sale for payment of debts and legacies, except as provided in subsection (b) of section 3, to the extent of the declared homestead exemption; provided, however, that the declaration of homestead for such elderly or disabled person that complies with section 5 has been recorded; and provided, further, that each owner occupies or intends to occupy the home as his principal residence. . . .

[5] Mass. Gen. Laws ch. 188, § 3(b)(6) provides:

(b) An estate of homestead shall be exempt from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies except as follows: . . .

(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

7

property to his wife or paying down the HELOC, it would be too late for that judgment to trump Mr. Smither's homestead exemption claim which became fixed on March 28, 2014, when he filed his bankruptcy petition.

Even if Mr. Burdick could somehow surmount this insurmountable obstacle, the fraud exclusion in the state Homestead Act is unenforceable in bankruptcy to the extent it is inconsistent with the federal Bankruptcy Code. *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999).

In *Weinstein* the creditor objected to Mr. Weinstein's attempt to avoid its judicial lien on the basis that the then applicable version of the Massachusetts Homestead Act left excluded from its coverage "a debt contracted prior to the acquisition of said estate of homestead. . ." Mass. Gen. Laws § 1(2) (repealed 2011). Relying on the Supreme Court's decision in *Owen v. Owen*, 500 U.S. 305 (1991), that a state's limitations in its exemption statute may not stand if they conflict with the Bankruptcy Code, the First Circuit rejected the creditor's argument noting that the exception for pre-existing debts in the Massachusetts Homestead Act was not included in the itemization of prepetition debts for which exempt property may be liable set forth in Bankruptcy Code § 522(c),[6] and thus conflicted with the Code.

---

[6] Bankruptcy Code § 522(c) provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except--
>
> > (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);

8

Mr. Burdick asserts that *Owen* and by extension, *Weinstein*, has been overruled by *Law v. Siegel* and that state law, including its built-in exemption limitations, controls Mr. Smither's fate. Mr. Burdick derives his argument from an observation contained in an extended piece of dicta at the end of the Court's unanimous opinion in *Law v. Siegel*: "It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." *Law v. Siegel*, 134 S. Ct. at 1196-97 (emphasis in the original).

Before he retired, Judge William C. Hillman of this court examined this sentence and concluded that it does not serve to overrule *Owen* upon which *Weinstein* relied. As Judge Hillman observed:

> As a final note, despite the Supreme Court's recent admonition [in *Law v. Siegel]* that "when a debtor claims a state-created exemption, the exemption's scope is

---

(2) a debt secured by a lien that is--
(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
(ii) not void under section 506(d) of this title; or
(B) a tax lien, notice of which is properly filed;
(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or
(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

9

> determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption," I do not understand the Supreme Court to have abrogated *Owen's* central premise that state law exemptions are preempted to the extent they conflict with the Bankruptcy Code. To the contrary, the Supreme Court cited *In re Sholdan* with approval as an example of how a state may provide the means to address debtor misconduct. In that case, the United States Court of Appeals for the Eighth Circuit held that under "Minnesota's enactment of the [Uniform Fraudulent Transfer Act], a debtor may not claim a homestead exemption when he or she transfers the property 'with actual intent to hinder, delay, or defraud' creditors." Thus, the restriction on the debtor's homestead arose from the Minnesota UFTA and not from an exception to the homestead statute. To be clear, however, the Massachusetts UFTA has no such provision.

*In re Dickey,* 517 B.R. 5, 22–23 (Bankr. D. Mass. 2014) (internal footnotes omitted).

"[E]xemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'" *Schwab v. Reilly*, 560 U.S. 770, 791 (2010). In *Owen* the Supreme Court ruled that a state may not thwart a debtor's fresh start by baking into its exemption statute restrictions that conflict with the Bankruptcy Code. 500 U.S. at 313. In *Law v. Siegel* the Supreme Court makes no mention of overruling its previous holding in *Owen* and I agree with *Dickey* that *Law v. Siegel* should not be read that way. Therefore, wholly apart from the non-existence of a pre-petition fraud judgment and execution, Mr. Smither's claim of a homestead exemption pursuant to Mass. Gen. Laws ch. 188, § 2 would not be subject to the § 3(b)(6) exclusion for fraud in any event.

### *Section 522(o) and Tenancies by the Entirety*

Mr. Smither argues that § 522(o) does not apply to real property like his in which ownership is held by a husband and wife as tenants by the entirety. He notes that the Bankruptcy Code limits application of § 522(o) to state law exemptions claimed under § 522(b)(3)(A) while he claims his homestead exemption under § 522(b)(3)(B).

10

Bankruptcy Code § 522(b)(3) permits a debtor in bankruptcy to exempt property based on exemptions not specifically legislated in the Bankruptcy Code, typically those provided under state law. § 522(b)(3) provides in relevant part:

> Property listed in this paragraph is--
> (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is *exempt from process* under applicable nonbankruptcy law. . . (Emphasis added).

As is apparent, subsection (3)(B) is not subject to the effects of § 522(o). Mr. Smither's homestead exemption cannot arise under subsection (3)(B), however, because a Massachusetts tenancy by the entirety is not "exempt from process." Property whose owners hold title as tenants by the entirety under Massachusetts law is exempt from seizure but not from attachment. Mass. Gen. Laws ch. 209, § 1; *Peebles v. Minnis*, 402 Mass. 282, 283 (1988). Therefore, Mr. Smither's state homestead claim arises not under subsection (3)(B) but subsection (3)(A) and is thus subject to the effects of § 522(o). *See In re McConchie*, 94 B.R. 245 (Bankr. D. Mass. 1988).

***Section 522(o)***

Mr. Burdick invokes Bankruptcy Code § 522(o) seeking to reduce Mr. Smither's homestead exemption claim by as much as $440,526.00, which is the amount of non-exempt cash he alleges Mr. Smithers paid to DCU to reduce his indebtedness on the HELOC during the HELOC Payment Period.

The parties have stipulated that at the beginning of the HELOC Payment Period the balance due on the HELOC was $77,083.90 and that at the end of the Period on the bankruptcy filing date the balance was $151,989.43. As noted previously, during the Period, the HELOC balance regularly fluctuated as Mr. Smithers drew down on the HELOC and then made partial lump sum repayments. These repayments, Mr. Burdick alleges, ran afoul of § 522(o).

Bankruptcy Code § 522(o) provides in relevant part:

For the purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

Section 522(o), like § 522(p) which established a ceiling (currently $155,675) on exemption claims in homes acquired by debtors within 1215 days prior to filing bankruptcy, was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L 109-8, 119 Stat. 23 § 308 (Apr. 20, 2005). The purpose of the § 522 amendments was to prevent debtors from gaming the system by bulking up on homestead exemptions at the expense of their creditors. The legislative history of BAPCPA's § 522 amendments makes this clear. As to § 522(o) the legislative history states: "To the extent a debtor's homestead exemption was obtained through the fraudulent conversion of nonexempt assets (e.g., cash) during the ten-year period preceding the filing of the bankruptcy case, S. 256 requires such exemption to be reduced by the amount attributable to the debtor's fraud." *Soule v.*

*Willcut (In re Willcut),* 472 B.R. 88, 94-95 (10th Cir. B.A.P. 2012), (citing H.R. Rep. No. 109–31 pt. 1, at 16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102) (footnotes omitted)).

In *Willcut*, the United States Bankruptcy Appellate Panel for the Tenth Circuit discussed the purpose of § 522(o) and (p) as follows:

> Ultimately, it appears that the purpose of adding § 522(o) and § 522(p) in 2005 was the attempt by Congress to address the pre-BAPCPA "mansion loophole" and to limit the value of homestead exemptions when there is fraud.

*Id.*

In *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012), Judge Joan N. Feeney of this court articulated a four-part test for determining whether § 522(o) should be applied to reduce a debtor's claimed homestead exemption. The party seeking to invoke § 522(o) must establish that:

> (1) the debtor disposed of property within the 10 years preceding the bankruptcy filing;
> (2) the property that the debtor disposed of was nonexempt;
> (3) some of the proceeds from the sale of the nonexempt property were used to buy a new homestead, improve an existing homestead, or reduce the debt associated with an existing homestead; and
> (4) the debtor disposed of the nonexempt property with the intent to hinder, delay or defraud a creditor.

*Id.* (*quoting In re Presto,* 376 B.R. 554, 568 (Bankr.S.D.Tex.2007)).

The parties do not dispute that the first and second criteria of the *Corbett* test have been met. The issue to be determined here is the existence of the third criterion. Specifically, the requirement that the proceeds of non-exempt property were used to reduce debt (namely the HELOC) associated with the existing homestead resulting in an increase in the homestead's value.

In determining whether there is a value increase one looks to the value of the home as of the bankruptcy filing date. So, for example, if as of the filing date the debtor has no equity in her

13

home and hence her homestead exemption claim has no real value, there would be no § 522(o) reduction in the claimed homestead even if there were pre-petition fraudulent payments. *Willcut*, 478 B.R. at 97. In other words, if a fraudulent loan payment some years prior to bankruptcy created an increase in home equity and thus an increase in the real value of a homestead exemption at the time of the payment but by the time of the bankruptcy that increase had evaporated due, for example, to physical or market decline, § 522(o) would not be available to reduce the debtor's homestead claim in bankruptcy. *Willcut* 478 B.R. at 97.

To offer a simple example, say a year prior to her bankruptcy a debtor owned a home worth $500,000 subject to a mortgage securing a loan with a balance of $250,000 and a declared Massachusetts homestead exemption whose value was equal to the remaining equity of $250,000. At that time, using otherwise non-exempt cash and with fraudulent intent, the debtor paid off the mortgage in full thereby doubling her equity and the value of her exemption to $500,000 (the Massachusetts maximum). Six months later the debtor borrowed $300,000 secured by a new mortgage on her home which is how things remained until her bankruptcy petition was filed. So as of the bankruptcy filing date the debtor's equity and the value of her exemption are actually $50,000 less than they were just prior to the fraudulent payment. Since the fraudulent $250,000 payment did not increase the debtor's equity in her home as of the bankruptcy filing date, § 522(o) would not result in a reduction of the debtor's $200,000 homestead exemption. To conclude otherwise would bestow a $200,000 windfall on the debtor's creditors and make § 522(o) purely punitive, a result I do not believe is consistent with the purpose of the statute.[7]

---

[7] This is not to suggest that a debtor's bad behavior is without consequence. One must distinguish between fraudulent payments in the context of homestead exemptions (which is all §

14

When the debt in question is a conventional direct reduction mortgage loan or other secured debt where the balance is fixed at the loan's inception and moves exclusively or substantially in one direction only (down) as payments are made, application of the third prong of the Corbett test is simple. There is a direct correlation between debt reduction by payments using non-exempt cash and home equity increase and corresponding increase in the value of the homestead exemption.

While the secured loan in this case is not a direct reduction mortgage but a line of credit with repeated borrowings and repayments throughout the loan's existence, the analysis is the same. Like the above example it is not possible to attribute a particular HELOC payment to an increase in Mr. Smither's home equity as of the bankruptcy filing date. In fact, the balance due on the HELOC on Mr. Smither's bankruptcy filing date was greater than the balance due at the beginning of the HELOC Payment Period meaning that the alleged fraudulent payments by Mr. Smithers during the HELOC Payment Period did not result in an increase in his home equity or the value of his homestead exemption claim as of the filing date.

For this reason the trustee cannot carry his burden under the third prong of the *Corbett* test and thus his objection to Mr. Smither's homestead exemption based on § 522(o) must fail.

## Conclusion

There is no need for a trial on the issue of Mr. Smither's intent to hinder, delay or defraud his creditors. Mr. Burdick cannot prevail on his objection to Mr. Smither's claim of a homestead

---

522(o) deals with) and fraudulent transfers generally. The fact that § 522(o) may not be available to reduce a homestead claim would not preclude a trustee or creditor from invoking other statutory causes of action such as §§ 544 or 548 avoidance or 727 discharge claims.

exemption in his property at 13 Presidential Drive in Southborough because the fraud exception in the Massachusetts homestead statute does not apply in bankruptcy cases and because Mr. Smither's HELOC payments did not result in an increase in the value of his homestead exemption as of the date of his bankruptcy filing. A separate order overruling Mr. Burdick's objection shall issue.

November 30, 2015                                                                                    By the Court,

                                                                                                     _____
                                                                                                     Melvin S. Hoffman
                                                                                                     U.S. Bankruptcy Judge

    Counsel Appearing:    Mark Foss, Esq.
                                        Fletcher, Tilton & Whipple, P.C.,
                                        Worcester, MA
                                        for John A. Burdick, chapter 7 trustee

                                        Charles R. Bennett, Esq.
                                        Kathleen R. Cruickshank, Esq.
                                        Murphy & King, P.C.
                                        Boston, MA
                                        for Ernest Smither, Jr., debtor